**OFFICE OF THE FEDERAL PUBLIC DEFENDER**
**DISTRICT OF MARYLAND**
NORTHERN DIVISION
TOWER II, NINTH FLOOR
100 SOUTH CHARLES STREET
BALTIMORE, MARYLAND 21201-2705
TEL: (410) 962-3962
FAX: (410) 962-0872

JAMES WYDA
FEDERAL PUBLIC DEFENDER

COURTNEY D. FRANCIK
ASSISTANT FEDERAL PUBLIC DEFENDER

July 31, 2024

The Honorable Ellen L. Hollander
United States District Judge
United States District Court, District of Maryland
101 West Lombard Street
Baltimore, Maryland 21201

  Re: <u>United States v. Robert Smith III</u>, ELH-23-343
    Sentencing Letter

Dear Judge Hollander,

  Robert Smith is scheduled to appear before Your Honor for sentencing on August 21, 2024, at 10:00 a.m., having pled guilty to one count of possessing a firearm as a prohibited person in violation of 18 U.S.C. § 922(g)(1). Mr. Smith's guilty plea was tendered pursuant to an agreement under Federal Rule of Criminal Procedure 11(c)(1)(C), wherein the parties agree that a sentence of 27 months' imprisonment followed by an unspecified period of supervised release is the appropriate disposition of this case.

  Mr. Smith hereby asks the Court to accept the terms of his C plea agreement and sentence him accordingly. Twenty-seven months of imprisonment represents Mr. Smith's longest sentence and is "sufficient but not greater than necessary" to satisfy the directive under 18 U.S.C. § 3553(a), by reflecting the applicable advisory guidelines range, the impact of drug addiction on Mr. Smith's trajectory and offense conduct, and his rehabilitative potential.

  **A. Factual and Procedural Background**

  Mr. Smith's offense occurred on June 2, 2023, when members of the Baltimore Police Department executed a search warrant at 2050 Grinnalds Avenue – his daughter's residence in Southwest Baltimore, where he had been living. While searching the basement, BPD officers found a loaded handgun in a wall vent near a washing machine where drug paraphernalia had been located. Mr. Smith promptly admitted to possession of the handgun and was arrested on the spot. He initially faced related state charges in Baltimore City Circuit Court, but those charges were dropped in favor of federal prosecution on September 29, 2023. His initial appearance in federal court was held on October 27, 2023, and on February 16, 2024, the Court denied his

request to be released to long-term residential substance use treatment at Mountain Manor in Sykesville, Maryland. Mr. Smith has been continuously detained since his June 2023 arrest. On July 1, 2024, Mr. Smith appeared before the Court and pled guilty to the sole count in the Indictment, charging him with possession of a firearm as a prohibited person under 18 U.S.C. 922(g)(1). His sentencing is scheduled for August 14, 2024, at 2:30 p.m.

### B. Sentencing Guidelines

As part of the plea agreement, the parties have stipulated to a final adjusted offense level of 17. ECF No. 26 at 5. The parties' calculation is premised upon a base offense level of 20 pursuant to U.S.S.G. § 2K2.1(a)(4)(A), because Mr. Smith committed the instant offense after sustaining one felony conviction for a controlled substance offense, and an anticipated three-level decrease pursuant to § 3E1.1(a) and (b), based on Mr. Smith's prompt acceptance of responsibility. *Id.* On the assumption that Mr. Smith falls into Criminal History Category II, the applicable advisory guidelines range is 27 to 33 months' imprisonment.

### C. Mr. Smith's History and Characteristics

Mr. Smith, 45, was born and raised in South Baltimore until age 14, when he moved to Hagerstown, Maryland. He describes the South Baltimore neighborhood where he spent his early adolescence as rough around the edges, but "with more fighting than shooting." As a child, Mr. Smith enjoyed spending time outside and playing sports with his friends from the neighborhood. While his parents were reportedly strict and relied on corporal punishment to discipline Mr. Smith, he never viewed them as abusive.

Mr. Smith's parents separated when he was about 13 years old. He spent a little while living with his dad, but soon thereafter moved to Hagerstown to live with his mom, who had family there. His adjustment to life in western Maryland was rocky, happening at a vulnerable age when peer groups and peer pressure play an especially prominent role in young people's lives. Mr. Smith recalls running away from his mother's house around age 13 or 14, and he attributes that behavior to his discontent in Hagerstown. Around the same time, Mr. Smith started acting out and getting into trouble, resulting in his first contacts with the legal system. He sadly left school during the 10th grade and never returned.

Around age 18 – and at his earliest real opportunity to do so – Mr. Smith moved back to Baltimore. Within two years, while still very much a child himself, Mr. Smith became a father to his only child, Tensia. Despite the instability he experienced in his twenties and thirties, Mr. Smith played a prominent if not dominant role in Tensia's upbringing. When she was about 12 or 13 years old, Mr. Smith obtained legal custody of her. At that point, he had moved back to Hagerstown and earned both his GED and a barber's license. He has continually relied on his barbering skills to provide for himself, although his business slowed considerably as a result of the Covid-19 pandemic.

Mr. Smith started using marijuana around age 14, shortly after moving to Hagerstown. He stayed away from more serious drugs until his mid-20s, when he was introduced to painkillers and heroin at the Jessup Correctional Institution. The magnitude of Mr. Smith's

substance use issues has waxed and waned over the years; however, at the time of his 2023 arrest, he had been battling an opioid habit for nearly 20 years. He was primarily using percosets, fentanyl, and Xanax, and he reports that he was easily spending over $100 per day to maintain his habit. Mr. Smith has never participated in formal drug treatment apart from methadone programs in or around 2016 and 2019, which he enrolled in as a condition of state probation. Following his arrest on the instant offense, he had to detox in jail. During his health assessment at the Central Booking and Intake Facility on the day of his arrest, Mr. Smith reported snorting 15 pills of heroin and 1.5 bars of Xanax per day.

### D. The Appropriate Sentence

Pursuant to 18 U.S.C. § 3553(a), the Court is required in every adjudicated criminal case to impose a sentence that is "sufficient, but not greater than necessary" to accomplish the statutory purposes of sentencing: just punishment, specific and general deterrence, protection of the public, and rehabilitation. Here, that sentence is 27 months' imprisonment – a term that is jointly recommended by both parties, would represent Mr. Smith's lengthiest sentence to date, and falls within the applicable advisory guidelines range. Given appropriate support for his substance use issues, Mr. Smith, a successful barber with proven resilience, is unlikely to violate the law again.

That the parties' jointly recommended sentence of 27 months' imprisonment reflects the severity of Mr. Smith's offense is supported by its position relative to his prior sentences and within the applicable advisory guidelines range. To date, Mr. Smith's longest sentence appears to be from February 2006 until July 2007 for violating state probation. Thus, the nearly two years that Mr. Smith is likely to serve on this case represents a significant increase in punishment, and one that is sufficient to achieve the retributive objective of sentencing. This is particularly true given the recommendation's position within the applicable advisory guidelines range.

Similarly, Mr. Smith need not be sentenced to more than 27 months' imprisonment to be deterred from committing another offense. This federal prosecution, and the fact that Mr. Smith expects to be sentenced to the longest term of incarceration he has ever received, has sent a sufficiently strong deterrent message.

For Mr. Smith, recovery from opiate addiction, and not incarceration, will make the biggest difference on his future. Mr. Smith has no prior convictions involving firearms, nor any history of violent crime. Rather, his record reflects that of someone who has struggled throughout his life to attain and maintain stability and whose potential has been continually derailed by the impact of drug addiction. Mr. Smith has the ability and motivation to lead a productive and law-abiding life so long as he receives evidence-based treatment to abstain from drugs. The most appropriate venue for him to receive those services is in the community, as a condition of supervised release, and not within the Bureau of Prisons.

The destabilizing impact of incarceration is well-documented, and is reflected in data capturing post-release employment, economic self-sufficiency, and even recidivism. Michael

Mueller-Smith, *The Criminal and Labor Market Impacts of Incarceration* (Aug. 18, 2015).[1] Given the cascading consequences of incarceration, it is not surprising that evidence of the "deterrent effects from longer prison sentences are minimal to nonexistent," and that "unnecessary incarceration, especially when compared to more cost-effective non-custodial responses such as programming or probation, 'does not prevent reoffending and has a criminogenic effect on those who are imprisoned.'" Heather Warnken, Center for Criminal Justice Reform, University of Baltimore School of Law, *Testimony in Opposition to SB889/HB481*, at 3 (Mar. 20, 2023) at 5 (citing Daniel Webster et al., *Reducing Violence and Building Trust: Data to Guide Enforcement of Gun Laws in Baltimore*, Johns Hopkins Bloomberg School of Public Health, Center for Gun Policy and Research, at 24 (2014)).

In their 2014 report regarding the enforcement of gun laws in Baltimore, researchers from the Johns Hopkins Center for Gun Policy and Research (JHCGPR) found that, "increasing the certainty that violators experience consequences for committing gun crime is more important and cost-effective in reducing crime than increasing length of sentences." *Id.* at 4 and 24. The JHCGPR's finding tracks with prevailing deterrence theory, which widely recognizes that "the perceived *certainty* of punishment [is] more important than the perceived *severity*." Ray Paternoster, *How Much Do We Really Know About Criminal Deterrence?*, 100 J. Crim. L. & Criminology 765, 817 (2010)[2]; Nat'l Institute of Justice, *Five Things About Deterrence* (Jun. 5, 2016).[3] Indeed, severity increases are "seldom if ever crime preventatives." Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime & Just. 1, 29 (2006). Accordingly, the parties' jointly recommended sentence of 27 months' imprisonment is sufficient to achieve the objective of general deterrence.

E.  **Conclusion**

To satisfy the directive of § 3553(a), for the reasons explained herein and at the upcoming sentencing hearing, I respectfully request that the Court sentence Mr. Smith to the parties' joint recommendation of 27 months' imprisonment followed by a period of supervised release.

Respectfully submitted,

/s/
Courtney D. Francik
Assistant Federal Public Defender

---

[1] https://sites.lsa.umich.edu/mgms/wp-content/uploads/sites/283/2015/09/incar.pdf

[2] https://scholarlycommons.law.northwestern.edu/cgi/viewcontent.cgi?article=7363&context=jclc

[3] https://nij.ojp.gov/topics/articles/five-things-about-deterrence